In re Robert Max RUBIA, Debtor,

J. Michael Morris, Trustee,
Plaintiff–Appellant,

v.

Vulcan Chemical Credit Union,
Defendant–Appellee,

and

Robert Max Rubia, Defendant.

No. 01–3020.

United States Court of Appeals,
Tenth Circuit.

Dec. 12, 2001.

Before HENRY, ANDERSON, and BRISCOE, Circuit Judges.

**ORDER AND JUDGMENT** *

HENRY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

J. Michael Morris, bankruptcy trustee for the estate of debtor Robert Max Rubia, appeals an order of the Bankruptcy Appellate Panel (BAP) affirming the bankruptcy court's denial of his motion for turnover of post-petition payments in the amount of $1,136 made to Vulcan Chemical Credit Union (Credit Union). *See Morris v. Vulcan Chem. Credit Union (In re Rubia),*

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

257 B.R. 324 (10th Cir.BAP 2001). We exercise jurisdiction under 28 U.S.C. § 158(d), and we affirm.

## BACKGROUND

At the time the debtor filed his petition seeking protection under Chapter 7 of the Bankruptcy Code, he owed the Credit Union approximately $10,440 on a purchase-money loan for a 1993 Ford Ranger. Post-petition, the debtor continued to possess the Ranger, claiming it to be exempt property, and also continued to make loan payments to the Credit Union through automatic payroll deductions. The Credit Union filed a proof of claim in the debtor's case, asserting a secured claim on the Ranger loan.[1]

The Credit Union's security interest on the loan, however, was not perfected until after the beginning of the ninety-day preference period established by 11 U.S.C. § 547(b)(4)(A). Because of the belated perfection date, the Trustee filed an application with the bankruptcy court representing that he and the Credit Union had agreed that the security lien on the Ranger should be avoided as of the date of the bankruptcy filing. The bankruptcy court approved the application. The debtor began making payments on the loan to the estate.

The Trustee then filed this action against the Credit Union and the debtor, seeking to recover the $1,136.00 in post-petition payments previously made to the Credit Union and to obtain an acknowledgment from the debtor that future payments would be made to the Trustee. The debtor did not answer the complaint and default judgment was entered against him. The default judgment required the debtor to make all payments on the Ranger to the estate and also to name the trustee as the loss payee with regard to any insurance policy on the Ranger.

The claim against the Credit Union proceeded to trial in the bankruptcy court. At trial, the debtor testified that he intended the post-petition payments to reduce the amount of the lien on the Ranger. He acknowledged, however, that he continued to pay the Credit Union on another, unsecured loan. The manager of the Credit Union testified that the debtor had come in to talk about the bankruptcy and that she believed "he told [her] that he had intended to pay the credit union," without distinguishing between his secured and unsecured loans. Appellant's App. at 78.

The bankruptcy court identified the narrow issue before it and recognized the parties' competing interests in the post-petition payments. It stated:

> The issue then before the Court is whether the trustee is entitled to recover the post-petition payments of approximately $1,136.00.... The debtor's income post-petition is clearly not the property of the estate.... The problem is the Court's having some difficulty concluding that the post-petition money should somehow accrue to the benefit of the trustee since we're fighting over post-petition assets.... [T]he credit union, as the trustee argues, may be getting a windfall, and [counsel for the credit union] has suggested already that the debtor himself may have an action against the trustee ... for unjust enrichment, but those really aren't issues before the Court.

*Id.* at 96–97. The bankruptcy court concluded that, as a matter of law, the Trustee was not entitled to the payments made with the debtor's post-petition earnings because the payments were not made from property of the estate.

---

1. Although the only loan at issue in this appeal is the one secured by the Ranger loan, the debtor had actually obtained two additional loans from the Credit Union: one secured by a 1993 Ford Taurus and a signature loan.

The Trustee appealed to the BAP. In reviewing the factual background, the BAP noted the lack of record information as to: (1) challenges, if any, to the debtor's claimed exemption of the Ranger; (2) the debtor's continued possession of the Ranger; (3) a post-petition agreement between the Trustee and the debtor requiring the debtor to pay the Trustee for the Ranger; and (4) the value of the Ranger.[2] It also observed that the debtor was not a party to the Trustee's appeal. Like the bankruptcy court, the BAP majority confined its analysis to the limited facts presented by the case and determined that the Trustee was not entitled to the contested payments. This appeal followed.

## DISCUSSION

 The sole issue for our review is a question of mixed law and fact: whether, under the circumstances of this case, the bankruptcy court should have ordered the post-petition payments turned over to the Trustee. "In our review of BAP decisions, we independently review the bankruptcy court decision." *In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir.2000). Legal determinations are reviewed *de novo*, *Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 803 (10th Cir.1999), while findings of fact are reviewed for clear error, *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993).

We have carefully reviewed the parties' briefs, the amicus brief, and the limited factual record. We agree with the bankruptcy court and the BAP that, under the circumstances of this case, the Trustee is not entitled to the post-petition pay-

ments at issue. *See In re Closson*, 100 B.R. 345, 347 (Bankr.S.D.Ohio 1989) (denying a motion for turnover of post-petition payments filed by a trustee who had successfully avoided a creditor's lien); *Kelley v. Chevy Chase Bank (In re Smith)*, 236 B.R. 91, 101 (Bankr.M.D.Ga.1999) (holding that post-petition payments are not recoverable because they are made with post-petition earnings and therefore, there is no loss to the estate).[3] We therefore affirm the bankruptcy court's judgment for substantially the same reasons as those stated in the BAP opinion, *see Rubia*, 257 B.R. at 326–29.

---

**2.** On the date of the bankruptcy filing, the principal balance owed on the Ranger was $10,455.04. The BAP refused to speculate, however, on a valuation of the Ranger.

**3.** The Trustee suggests that the Credit Union's acceptance of the debtor's payments may

have violated the automatic stay, citing *In re Hellums*, 772 F.2d 379, 381 (7th Cir.1985) (holding that the stay applies to post-petition automatic payroll deductions). The record does not show that this issue was raised in the bankruptcy court and, accordingly, we do not reach it here.